IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CLINTON WRIGHT JR.,<br><br>        Plaintiff,<br><br>v.<br><br>FIRST ADVANTAGE BACKGROUND SERVICES CORP.,<br><br>        Defendant. | Civ. Action No.:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Clinton Wright Jr. ("Plaintiff" or "Mr. Wright") by and through his counsel brings the following Complaint against First Advantage Background Services Corp. ("Defendant" or "First Advantage") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff of being convicted of three separate larceny charges and two probation violations in a span of less than eighteen months.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

1

3.      Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of three misdemeanor larcenies. Defendant's reporting is grossly inaccurate and untrue.

4.      Plaintiff has never been charged with or convicted of a property crime in his life.

5.      Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment background check report from Defendant, which included inaccurate criminal records, which do not belong to Plaintiff.

6.      Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from Davidson and Guilford Counties, North Carolina regarding the criminal records prior to publishing Plaintiff's report to his prospective employer.

7.      Had Defendant inquired further after receiving Plaintiff's dispute, it would have discovered that the criminal records belong to different consumers who are wholly distinguishable from Plaintiff by their first and middle name, date of birth, driver's license number, and Social Security Number.

8.      Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9.      Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10.     Defendant's inaccurate report cost Plaintiff a good paying job and job security.

11.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and

benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – **the criminal records that do not belong to him** – was inaccurate and delete the disputed information from the subject employment report, in violation of the FCRA, 15 U.S.C. § 1681i.

## PARTIES

13. Clinton Wright Jr. ("Plaintiff" or "Mr. Wright") is a natural person residing in Newark, Delaware, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Defendant First Advantage Background Services, Corp. ("Defendant" or "First Advantage") is a Florida corporation doing business throughout the United States, including the State of Delaware and in this District, and has a principal place of business located at 1 Concourse Parkway NE, Suite 200, Atlanta, GA 30328. First Advantage can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

15. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such

as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

26. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

30. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

31. The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

32. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

33. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

35. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

36. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting criminal records that belong to unrelated consumers who have different first and middle names, different date of birth, and different driver's license number, than Plaintiff.

39. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS
### Plaintiff Lost His Personal Identification Documents

40. Sometime in 2015, Plaintiff lost his wallet, which contained his identification, social security card, and birth certificate.

41. Plaintiff did not think to make a police report because he did not notice any suspicious activity on his credit, nor did he have any reason to believe that his wallet was taken by any individual.

**Plaintiff Applies for a Job with Amazon**

42. In or about the beginning of January 2023, Plaintiff applied for full-time employment with Amazon.

43. Upon applying to Amazon, Plaintiff successfully completed an interview and passed a drug test.

44. On or about the beginning of January 2023, Amazon extended a job offer to Plaintiff for the position to which he applied. The job offer was conditioned upon Plaintiff passing a background check ("employment report.")

**Defendant Published an Inaccurate Background Check Report to Amazon**

45. Amazon contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

46. On or about January 5, 2023, Amazon ordered a criminal background check on Plaintiff from Defendant.

47. On or about January 6, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Amazon.

48. Within that employment report, Defendant published inaccurate information about Plaintiff.

49. Specifically, Defendant's employment report about Plaintiff included grossly inaccurate and stigmatizing two misdemeanor larceny convictions associated with Case Nos. 2016CR 053183 and 2016CR 052605 from Davidson County, North Carolina, and a misdemeanor larceny conviction associated with Case No. 17CR 078844 from Guilford County, North Carolina, which appeared in the employment report as follows:

| | |
|---|---|
| Case Reference # | 17CR 078844 |
| Case Date | 27/Jun/2017 |
| Name on File | CLINTON WRIGHT |
| Address on File | 3808 W GATE CITY BLV D S, GREENSBORO, NC |
| DoB on File | XX/XX/XXXX |
| Charge | LARCENY |
| Major/Minor Category | THEFT/FRAUD/BURGLARY / THEFT |
| Charge Type | MISDEMEANOR |
| Disposition | GUILTY |
| Disposition Date | 15/Sep/2017 |
| Sentence | JAIL 16 DAYS; CREDIT TIME SERVED 16 DAYS |

**Source Status History**

| Status Date | Description |
|---|---|
| 05/Jan/2023 12:31:57 PM | Search in progress. Estimated completion by 01/06/2023 |

**Disclaimers**

The official custodian of all court records for each county in North Carolina is the Clerk of the Superior Court of that county. The N.C. Administrative Office of the Courts (AOC) is not the official custodian of any case record and provides only copies of data entered by the Clerks. Data extracted provided through this service may not reflect pending or post-disposition activity on a case. AOC does not warrant the accuracy of the data. To verify a record's accuracy, contact the Clerk of the County of Record.

| | |
|---|---|
| Case Reference # | 16CR 052605 |
| Case Date | 13/May/2016 |
| Name on File | CLINTON WRIGHT |
| DoB on File | XX/XX/XXXX |
| Charge | LARCENY |
| Major/Minor Category | THEFT/FRAUD/BURGLARY / THEFT |
| Charge Type | MISDEMEANOR |
| Disposition | GUILTY |
| Disposition Date | 12/Oct/2017 |
| Sentence | JAIL 45 DAYS/SUSPENDED; PROBATION 18 MONTHS; CREDIT TIME SERVED 45 DAYS; FINE AND COSTS 1700; RESTITUTION 1180 |

| | |
|---|---|
| Case Reference # | 16CR 053183 |
| Case Date | 09/Jun/2016 |
| Name on File | CLINTON WRIGHT |
| DoB on File | XX/XX/XXXX |
| Charge | LARCENY |
| Major/Minor Category | THEFT/FRAUD/BURGLARY / THEFT |
| Charge Type | MISDEMEANOR |
| Disposition | GUILTY |
| Disposition Date | 12/Oct/2017 |
| Sentence | JAIL 45 DAYS/SUSPENDED; PROBATION 18 MONTHS; CREDIT TIME SERVED 19 DAYS |

50. The criminal records reported by Defendant about Plaintiff to Amazon ***do not*** belong to Plaintiff.

51. Plaintiff has never been charged with or convicted of the above-mentioned criminal records.

52. Upon further review of underlying public court records confirms that the records belong to unrelated individuals. Specifically, criminal record associated with Case No. 17CR 078844 belong to an unrelated male Lester Ramone Wright and the criminal records associated with Case Nos. 2016CR 052605 and 2016CR 053183 belong to an unrelated male Clinton Wright Jr ("Unrelated Individual Wright") and the criminal record associated with Case No. 17CR 078844 belong to an unrelated male Lester Ramone Wright.

53. Upon information and belief, Lester Ramone Wright used Plaintiff's identity when he was arrested for the criminal charges related to Case Nos. 17CR 078844, 2016CR 052605 and 2016CR 053183.

54. Had Defendant actually consulted or obtained the widely available underlying public court records regarding the criminal records, it would have seen obvious discrepancies between Unrelated Individual Wright, Lester Ramone Wright, and Plaintiff.

55. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Unrelated Individual Wright and Lester Ramone Wright Jr include the following:

    (a) Plaintiff's legal name is "Clinton Wright Jr" (no middle name) and the criminal record associated with Case. No 17CR 078844 belongs to a "**Lester Ramone** Wright," which is clearly indicated in the widely available public records from Guilford County, North Carolina.

    (b)    Plaintiff's date of birth, which was provided to Defendant prior to publishing the subject employment report, is January 2, 1966, yet the underlying public court records indicate that Lester Ramone Wright Jr's date of birth is June 12, 1970.

    (c)    Plaintiff's driver's license number, which was provided to Defendant and was contained on the face of the background check report, is entirely different from the driver's license number that is associated with the Case Nos. 2016CR 052605 and 2016CR 053183.

56. The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

57. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal records belong to unrelated individuals with different first and middle names than Plaintiff, different date of birth, and different driver's license number.

58. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### Amazon Denies Plaintiff's Job Application

59. On or about February 14, 2023, Plaintiff received a letter from Amazon which stated that his employment application was denied as a direct result of the criminal records reported by Defendant.

60. Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked and humiliated upon reviewing and realizing that the serious criminal convictions of another consumers, namely unrelated Individual Wright, and Lester Ramone Wright, were published in the employment report Defendant sold about Plaintiff to Amazon.

61. Plaintiff was very panicked, confused, and concerned about the impact of Unrelated Individual Wright's and Lester Ramone Wright's serious criminal records reported on the subject employment report – specifically, the impact of the same on his future.

62. Specifically, Defendant matched Plaintiff with Unrelated Individual Wright and Lester Ramone Wright and published their criminal records onto the employment report about Plaintiff and sold that report to Plaintiff's prospective employer. This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's employment report to Amazon, but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Employment Report**

63. On July 25, 2023, desperate to secure employment with Amazon and riddled with worry over the far-reaching impacts of being confused with Unrelated Individual Wright and Lester Ramone Wright, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via email with Defendant.

64. Plaintiff identified himself and provided information to Defendant to support his dispute. Especially, Plaintiff enclosed to his dispute letter his Identity History Summary issued by the Federal Bureau of Investigation.

65. The FBI report did not include the criminal convictions associated with Case Nos. 17CR 078844, 2016CR 052605 and 2016CR 053183.

66. Plaintiff specifically disputed the criminal records of Unrelated Individual Wright and Lester Ramone Wright.

67. Plaintiff specifically stated that the criminal records of Unrelated Individual Wright and Lester Ramone Wright do not belong to Plaintiff.

68. Plaintiff specifically asked Defendant to investigate and delete Unrelated Individual Wright's and Lester Ramone Wright's criminal records from any employment report about Plaintiff.

**Defendant Failed to Conduct a Reasonable Reinvestigation and Correct the Employment Report**

69. On or about September 26, 2023, more than four months after Plaintiff disputed, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and determined that its reporting was accurate and that it would not correct the subject employment report otherwise.

70. Defendant failed to issue a corrected employment report to Amazon.

71. Despite Plaintiff's dispute, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's July 25, 2023 dispute and failed to delete the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

72. Because Defendant failed to issue a corrected employment report, Amazon did not reinstate its job offer to Plaintiff.

73. But for Defendant's inaccurate employment report, Plaintiff's job offer would have proceeded to a hiring action, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant's erroneous reporting.

74. Defendant's false report cost Plaintiff a promising, well-paying job with Amazon.

75. The position with Amazon was full-time and Plaintiff was set to earn $18.75 per hour. More importantly, Plaintiff was excited to work with Amazon.

76. Due to Defendant's unreasonable procedures and shoddy, if any, dispute reinvestigation, Plaintiff has been unable to work for Amazon.

77. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

78. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**CLAIMS FOR RELIEF**

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

79. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

80. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

81. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

82. At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

83. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

84. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

85. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

86. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
## Failure to Perform a Reasonable Reinvestigation

87. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

88. The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a

consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

89. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

90. On at least one occasion during 2023, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct and/or delete the inaccurate information in the employment report that is patently inaccurate, misleading, and highly damaging to him, namely, stating that he was convicted of three misdemeanor larcenies.

91. In response to Plaintiff's dispute, Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the employment report and refused to correct the employment report at issue.

92. Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to delete the disputed inaccurate information from the subject employment report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a public source it has reason to know is unreliable.

93. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort

disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

94. Defendant willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

95. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

RESPECTFULLY SUBMITTED this 2nd day of October 2023.

**GARIBIAN LAW OFFICES, P.C.**

*/s/ Antranig Garibian*
Antranig Garibian, Esq. (DE Bar 4962)
Brandywine Plaza East
1523 Concord Pike, Suite 400
Wilmington, DE 19803
(302) 722-6885
ag@garibianlaw.com

*Attorneys for Plaintiff*
*Clinton Wright Jr.*